## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| CLADirect, Inc., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No. 4:19-cv-00553 |
| | § | |
| Bariven S.A., et al., | § | |
| | § | |
| *Defendants.* | § | |

## DEFENDANTS BARIVEN S.A. AND PDVSA SERVICES, B.V.'s MOTION TO SUBSTITUTE COUNSEL

Defendants Bariven S.A. and PDVSA Services, B.V. hereby move for an order pursuant to this Court's Local Rule 83.2 substituting the undersigned as counsel for Defendants Bariven S.A. and PDVSA Services, B.V., and removing attorneys Rodney Quinn Smith, II and Katherine Alena Sanoja of the law firm GST LLP as attorneys of record.

By filing this Motion to Substitute, Defendants do not waive any defenses that may be available to them, including their right to challenge service of process, nor do they concede that the allegations in the Amended Petition state a valid claim under any applicable law.

## BACKGROUND

Defendant Bariven S.A. ("Bariven") is wholly-owned by Venezuela's state-owned oil company Petróleos de Venezuela, S.A. ("PDVSA"). Bariven is therefore an agency or instrumentality of the Bolivarian Republic of Venezuela ("Republic").[1] Defendant PDVSA Services, B.V. is wholly-owned by Bariven and, thus, it too is a state-owned entity. The current

---

[1] *RSM Prod. Corp. v. Petroleos de Venezuela Societa Amonima (PDVSA),* 338 F.Supp.2d 1208, 1216 (D. Colo. 2004) (holding that a wholly owned subsidiary of PDVSA qualifies as an agency or instrumentality of Venezuela under the Foreign Sovereign Immunities Act); *see also Delgado v. Shell Oil Co.*, 890 F. Supp 1315, 1318-19 (S.D. Tex. 1994), *aff'd*, 231 F.3d 165, 175-76 (5th Cir. 2000) ("we hold that the majority ownership requirement for an entity to qualify as a 'foreign state' under the FSIA is satisfied by tiered or indirect majority ownership to the same extent that it is satisfied by direct ownership").

attorneys of record for Defendants Bariven and PDVSA Services, B.V. filed their appearances in February 2019 at the instruction of representatives of then-Venezuelan President Nicolas Maduro.

On January 23, 2019, Juan Guaidó ratified the application of article 233 of the Constitution of Venezuela, acting as Interim President of Venezuela. That same day, President Donald Trump issued a statement officially recognizing President Guaidó as the Interim President of Venezuela and rejecting the legitimacy of the Maduro regime.[2] On January 25, 2019, the U.S. Department of State accepted Interim President Guaidó's designation of Carlos Alfredo Vecchio as the Chargé d'Affaires of the government of Venezuela.[3] Mr. Vecchio currently serves as Ambassador of Venezuela to the United States and President Trump formally received him on April 8, 2019.[4]

On February 25, Treasury Secretary Mnuchin, in announcing new sanctions against the Maduro regime, stated: "The United States fully supports the efforts of Interim President Juan Guaidó to address the endemic corruption, human rights abuses, and violent repression that has become the hallmark of the illegitimate Maduro regime, and looks forward to the restoration of a democratically elected government for the people of Venezuela."[5] Also on February 25, Vice

---

[2] The White House, *Statement from President Donald J. Trump Recognizing Venezuelan National Assembly President Juan Guaido as the Interim President of Venezuela* (Jan. 23, 2019), available at https://www.whitehouse.gov/briefings-statements/statement-president-donald-j-trump-recognizing-venezuelan-national-assembly-president-juan-guaido-interim-president-venezuela/.

[3] U.S. Department of State, Press Release, *Representative of the Government of Venezuela to the United States* (Jan. 27, 2019), available at https://www.state.gov/representative-of-the-government-of-venezuela-to-the-united-states/ (recognizing that "Mr. Vecchio will have authority over diplomatic affairs in the United States on behalf of Venezuela" and "reaffirm[ing] the United States' strong support for interim President Guaidó's leadership of Venezuela.")

[4] U.S. Department of State, Official Blog, *Standing Up for Democracy and Rule of Law in Venezuela* (Apr. 11, 2019), available at https://blogs.state.gov/stories/2019/04/11/en/standing-democracy-and-rule-law-venezuela.

[5] U.S. Dep't of the Treasury, Press Release, *Treasury Sanctions Governors of Venezuelan States Aligned with Maduro* (Feb. 25, 2019), available at https://home.treasury.gov/news/press-releases/sm616.

Case 4:19-cv-00553   Document 12   Filed on 06/19/19 in TXSD   Page 3 of 8

President Pence reiterated the position of the United States: "President Guaidó, President Donald Trump asked me to be here today to deliver a simple message to you and to the people of Venezuela: *Estamos con ustedes*.  We are with you 100 percent.  We stand with you in America, along with all the nations gathered here today, and we will keep standing with you until democracy and your *libertad* are restored."[6]

On February 26, 2019, the National Assembly of the Republic approved the designation of Jose Ignacio Hernandez Gonzalez as Special Attorney General to represent the interests of the Republic, state-owned companies, and other decentralized entities of the public administration outside of Venezuela.  Special Attorney General Hernandez instructed current counsel in this case to act only on his requests and instructions.  Current counsel have declined that request and refuse to take instruction from Mr. Hernandez.  Mr. Hernandez then instructed undersigned counsel to file the instant motion.  Current counsel oppose the relief sought.

## DISCUSSION

Substitution of counsel is required by the decision of the President of the United States to recognize President Guaidó as the rightful representative of the Republic and current counsel's refusal to take instruction from President Guaidó's designee. A Presidential decision to recognize a party as the rightful government of a foreign state is conclusive and binding on the courts:

> What government is to be regarded here as representative of a foreign sovereign state is a political rather than a judicial question, and is to be determined by the political department of the government.  Objections to its determination as well as to the underlying policy are to be addressed to it and not to the courts.  Its action in recognizing a foreign government and in receiving its diplomatic representatives is conclusive on all domestic courts, which are bound to accept that determination ... .

---

[6] The White House, *Remarks by Vice President Pence to the Lima Group, Bogota, Colombia* (Feb. 25, 2019), available at https://www.whitehouse.gov/briefings-statements/remarks-vice-president-pence-lima-group-bogota-colombia/.

*Guaranty Trust Co. v. United States*, 304 U.S. 126, 137-38 (1938).

Courts are equally bound to accept the Executive Branch's refusal to recognize a foreign government or faction.  Permitting such a government to appear on behalf of the foreign state in U.S. courts necessarily implies acknowledgment of that government as the legitimate sovereign of the people residing within its borders—an acknowledgement and legitimization that would encroach upon the Executive Branch's exclusive recognition power.  *See Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 410 (1964) ("Political recognition is exclusively a function of the Executive.").  Accordingly, to avoid the "possible incongruity of judicial 'recognition,'" *id*., only the representatives of a government that has been recognized by the United States have standing to sue in U.S. courts or otherwise can avail themselves of the U.S. judicial system.  *See Pfizer v. Government of India*, 434 U.S. 308, 319-20 (1978) ("It has long been established that only governments recognized by the United States . . . are entitled to access to our courts . . ."); *see also* Restatement (Third) of Foreign Relations Law § 205 ("[A] regime not recognized as the government of a state[] is ordinarily denied access to courts in the United States [and] is not entitled to property belonging to that state located in the United States ... ."); *Nat'l Petrochemical Co. of Iran v. M/T Stolt Sheaf*, 860 F.2d 551, 553 (2d Cir. 1988) ("[A] state derecognizes a governmental regime when it recognizes another regime as the legitimate government of that state.").

The Executive Branch's authority to recognize and refuse to recognize foreign governments derives from the President's exclusive constitutional power to appoint and receive ambassadors (Article II, Sections 2 and 3), and from the pre-constitutional sovereign power to conduct the foreign relations of the United States.  *See United States v. Curtiss-Wright Export Corp*., 299 U.S. 304, 318-21 (1936); *Zivotofsky ex rel. Zivotofsky v. Kerry*, 135 S. Ct. 2076,

2084-86 (2015); Restatement (Third) of Foreign Relations Law § 204 ("Under the Constitution of the United States the President has exclusive authority to recognize or not to recognize a foreign state or government ... ."). "As a government, the United States is invested with all the attributes of sovereignty.  As it has the character of nationality it has the powers of nationality, especially those which concern its relations and intercourse with other countries.  *We should hesitate long before limiting or embarrassing such powers*."  *Curtiss-Wright*, 299 U.S. at 322 (quoting Mackenzie v. Hare, 239 U.S. 299, 311 (1915)) (emphasis by the *Curtiss-Wright* court).

The constitutional allocation of power over foreign affairs to the Political Branches reflects, in part, the fact that "federal courts generally lack the institutional expertise and constitutional authority to oversee foreign policy and national security, and should be wary of straying where they do not belong." *Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1419 (2018) (Gorsuch, J., concurring).  Thus, the courts are "wary of impinging on the discretion of the Legislative and Executive Branches in managing foreign affairs," *Sosa v. Alvarez-Machain*, 542 U.S. 692, 727 (2004), and circumspect when faced with "the danger of unwarranted judicial interference in the conduct of foreign policy," *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 116 (2013).  As the Supreme Court has explained, "neither the Members of this Court nor most federal judges begin the day with briefings that may describe new and serious threats to our Nation and its people." *Boumediene v. Bush*, 553 U.S. 723, 797 (2008).

For these reasons, courts deem the President's recognition actions binding and conclusive.  *Guaranty Trust Co.*, 304 U.S. at 137-38.  That is so both in cases where an unrecognized government seeks to assert claims in U.S. court, *see id*., and where competing political factions attempt to assert the interests of a foreign sovereign in U.S. court, see *Republic of Panama v. Air Panama Internacional, S.A.*, 745 F. Supp. 669, 673 (S.D. Fla. 1988).

In *Air Panama*, the Southern District of Florida confronted a dispute between President Delvalle, the recognized president of Panama, and Manuel Noriega over control of the Panamanian national airline, Air Panama.  The court held that the decision by the President to recognize the Delvalle government conclusively resolved the dispute:

> In the instant case it is undisputed that Air Panama is owned by the Republic of Panama.  The Executive Branch has recognized the Delvalle government as the lawful government of the Republic of Panama.  Therefore, under the political question doctrine, this Court accepts that recognition and consequently concludes that the Delvalle government is entitled to control Air Panama.

745 F. Supp. at 672-73.  The court also rejected purported "appearances" entered by lawyers on behalf of Air Panama on the instruction of the Noriega regime.  *Id*. at 676 ("It clearly appears, and the Court so finds, that Messrs. Kurzban and Gross are in fact attempting to assert the interests of the Noriega/Palma regime.  This effort must be rejected.  Only governments recognized by the United States are entitled to access to United States courts.").

As explained above, the Executive Branch has unequivocally and repeatedly repudiated Mr. Maduro's claims of political, legal, and diplomatic authority.[7]  Any judicial "recognition" of the Maduro regime, including by permitting attorneys authorized by that illegitimate regime (and not by representatives of Interim President Guaidó) to represent the interests of agencies or instrumentalities of the Republic in litigation before this Court, would conflict with the foreign-policy determinations of the Executive Branch, in stark violation of the Constitution's allocation of such determinations to the President.

---

[7] On May 1, 2019, the Court of Appeals for the District of Columbia Circuit denied an application filed by a representative of the Maduro regime seeking to bar Juan Guaidó and his representatives from arguing an appeal on behalf of the Republic.  *Rusoro Mining Ltd., et al. v. Bolivarian Republic of Venezuela*, No. 18-7044 (D.C. Cir. May 1, 2019).

## CONCLUSION

For the foregoing reasons, Defendants Bariven S.A. and PDVSA Services, B.V. respectfully request that the Court grant their motion for substitution of counsel, substituting the undersigned as counsel for Defendants Bariven S.A. and PDVSA Services, B.V., and remove Rodney Quinn Smith, II and Katherine Alena Sanoja, and the law firm GST LLP as attorneys of record.

Dated: June 19, 2019                    Respectfully submitted,

By:      /s/ Bruce D. Oakley
         Bruce D. Oakley
         Texas SBN 15156900
         Southern District ID No. 11824
         Aaron R. Crane
         Texas SBN 24050459
         Southern District ID No. 619093
         **HOGAN LOVELLS US LLP**
         Bank of America Center
         609 Main Street, Suite 4200
         Houston, Texas 77002
         T  (713) 632-1400
         D  (713) 632-1420
         F  (713) 632-1401
         bruce.oakley@hoganlovells.com
         aaron.crane@hoganlovells.com

         **Counsel for Defendants Bariven S.A. and
         PDVSA Services, B.V.**

**CERTIFICATE OF CONFERENCE**

On June 19, 2019, undersigned counsel exchanged email correspondence with Quinn Smith, current counsel for Defendants, regarding this Motion to Substitute. Mr. Quinn confirmed that GST LLP opposes the relief sought herein.

_/s/ Aaron R. Crane_____

Aaron R. Crane

**CERTIFICATE OF SERVICE**

I hereby certify that on the 19th day of June, 2019, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Alicia Maria Matsushima
MATSUSHIMA GARNER PLLC
2525 Robinhood Street
Houston, Texas 77005

Katherine A. Sanoja
Quinn Smith
GST LLP
1111 Brickell Ave, Ste 2715
Miami, FL 33131

Brock Cordt Akers
The Akers Firm
3401 Allen Parkway
Suite 101
Houston, TX 77019

_/s/ Bruce D. Oakley_____

Bruce D. Oakley
